Welch, J.
If this tax was authorized by law, as soon as assessed it became a debt; and the mere delay to place it upon the duplicate, or to use other means for its collection, did not extinguish the debt. Counsel do not, perhaps, mean seriously to dispute this proposition. But they contend, with great earnestness and much ability, that the tax is not authorized by law. Is this latter position maintainable ?
It- is not denied that the tax was assessed in conformity to the statute. Swan & Sayler, 834, sec. 1. But it is said that this statute is contrary to the constitution, in so far, at least, as it imposes upon a party any assessment to reimburse the compensation paid for his own land. It thus does indirectly, it is said, what can not be done directly. It pays a price for the land, and then takes it back. It accords the owner of land taken full compensation, “without deduction for benefits,” but it immediately assesses him *308 an equal amount for the same benefits. Thus, it is argued, the •constitutional provision which guarantees to the owner of land taken a full compensation, “ without deduction for benefits,” is ■evaded, or nullified, because the same result is reached, whether the value of the benefits is deducted in the first instance, or is afterward reclaimed in the shape of an assessment; the only difference to the land-owner being the difference between two toords —“assessment” and “deduction.”
308] *But there are two provisions of the constitution to be considered in connection with the question raised. One gives this power of condemnation,.with the restriction that it shall be exercised- only upon payment of a full compensation. The other gives the power of taxation by “ assessment.” No matter if the latter power is given by more implication (art. 13, sec. 6), or is only to be found in a general grant of legislative power, it is none the less certainly given, and is none the less sacredly to be maintained. Nothing is better settled under the provisions of the new constitution than the existence of this power of local assessment. Hill v. Higdon, 5 Ohio St. 243; Reeves v. Treasurer, 8 Ib. 333 ; Zanesville v. Richards, 5 Ib. 589. It is a distinct and separate power, wholly independent of the provision as to condemnation of land for public uses, or the price which shall be paid to the owner. If practicable, we must so construe the constitution as to leave both these provisions — that which guarantees a full compensation without deduction for benefits, and that which gives the power of local taxation— standing in full force, each unintrenched upon by the-other.
It is not denied that at the time of the adoption of the present constitution, this power of local assessment existed to the extent claimed here. See 18 Ohio, 518; 1 Ohio St. 127. If it does not •exist to the same extent now, it is because it is limited by the provision in regard to compensation. The argument seems to be, that it is so far limited by that provision as to deny the right to assess a party for that part of the cost of an.improvement which consists of the price of his own land. But if the argument is good to that extent, it is good for much more, and would, if carried to| its legitimate result, practically defeat the whole power of local| .assessments. Itwould be impracticable to discriminate in making! such assessments, between the expenditure incurred in paying for the party’s own land and the cost of other lands, or between the expenditure for his land and any other expenses of the improve *309 ment. And if it were practicable, it would be manifestly unjust to "the owners of other lands subject to assessment.
Suppose a new street to be laid through the lands of A and B, taking an acre from each. Neither, it is said, can be taxed to *pay for his own acre, but each can be taxed to pay for the [309 .acre of the other. What is the difference, whether each is taxed for half the cost ofthe two acres, or for the whole of the cost of one acre. If there were ten proprietors instead of two, the difference would be between one-tenth of ten, and one-tenth of nine. If one of the ten happened, unfortunately, to abut on the street, so that none of his land was taken, he would have to pay for all the land taken from the nine, although they got full prices for their land, “irrespective of benefits ” which they enjoy in common with him. One party might own nearly all the land benefited by fhe improvement, and yet, because a square rod of his land is taken, and fully paid for, he goes scot free, enjoying most of the benefits, and the whole burden falls upon the others. It is easy to see that no construction leading to such results can be admitted, and that if you deny the power to assess a party to pay for his own land, you logically and necessarily deny the power to make any assessment for land taken.
But the argument goes still further, and is, in effect, that you can mot assess a party whose land is taken, for any part of the cost of the improvement, whether for the price of land or for other expenses. The assessment, it is contended, is a kind of offset or equivalent, for the benefit rendered by the improvement — a mode •of deduction for benefits — and therefore you are forbidden to levy .any assessment for the improvement against a party whose land has been taken. ' The constitution guarantees him two things, (1) a full price for his land, and (2) that he shall be charged nothing for benefits. What benefits? The benefits from the whole improvement. The benefits are to him a unit, and you can no more .assess him for one part of the expense than for another. If you .assess him for the improvement — for any part of the expense, you assess him for the benefits. Counsel say that to “ assess ” him for the benefits, is the same as to “ deduct ” them. As to him “ deduction ” and “ assessment ” are convertible term's. Their reading of the provision in question is, that a party whose land is taken for public use, shall be paid a full compensation therefor, without “ assessment for benefits.”
*310, 311 If the argument is good for anything, it proves that no assess-310] ment *can be made, for any public improvement, against parties whose lands have been condemned for its use, and practically, the whole power of local assessment is defeated by this provision.
What was the object of the provision in question ? What was the evil intended to be remedied by it? Surely it was no part of its object to remedy any supposed inequality, or abuse of the power of local taxation. No such evil was complained of. The mischief which existed under the old constitution was, that the benefits which were common to his neighbors, without charge, were deducted from the price paid to the owner of land taken. The evil might well be denominated inequality of benefits and burdens among adjoining land-owners. You paid for the owner’s land in privileges, and left him still liable, equally with his neighbors whose lands were untaken, to any and all local assessments that might afterward be imposed. This was unequal, and therefore deemed unjust.' Experience proved, moreover, that it led to much abuse of the power of condemnation. A full remedy is found for these evils in the provision in question, without at all making it to interfere with the power of assessment'. Construed thus, it is in perfect accordance with the leading principle of taxation in the new constitution — uniformity and equality of burdens. It simply guarantees to the owner of iand condemned a full price. When that is paid, 'be stands on a perfect equality with all other owners of adjoining lands, equally liable, as he ought to be, to be taxed upon his other lands with them. He has the full price of his land in his pocket, and is an equal participant with them in benefits to adjoining lands. To throw the whole burden upon the others, in such a case, would be. to do them the precise injustice which was done to him under the old constitution. To do so, would be to avoid one evil only to run into another. It would be to avoid the evil of withholding from him a full and fair price for his lands, only to run into the equal evil of paying him two prices for it, the second price being at the expense of his neighbors.
311] *We think the assessment was legally made, and that the district court erred in holding otherwise.

Judgment reversed.

Day, C. J., and Brinkerhoff, Scott, and White, JJ., concurred.