Spear, C. J.
To a full understanding it may be well to state further that the Ohio Agricultural Experiment Station was created by the act of April 17th, 1882, vol. 79 Ohio Raws 113. By this act the location, control and general •management of the station are to be committed to a board of control, consisting of five members. The board is to locate the station, and appoint a competent director. These members of the board are to be appointed by the governor, and he, with the directors of the station, is to be ex-officio, a member of the board. This body is to make annual report of its experiments and work to the governor, which shall be published annually in the Ohio Agricultural Reports, and five thousand copies separate in pamphlet form for free distribution, and to be printed and paid for the same as other public printing.
The United States statutes of March 7, 1887, authorize certain sums to be appropriated from the National Treasury to aid such stations as may be established in the states or territories, and provide for the dissemination of information regarding experiments, by bulletins to be published at least once in three months, one copy to be sent to each newspaper in the state or territory where located, and, as far as the means of the station will permit, to such individuals actually engaged in farming as may request them, the same to be transmitted through the mails free. No other means are provided for informing persons interested of the results of experiments, and these are open to all alike.
*634 It will be noted that the board having control of the station, is a state board. Its reports must be made to the executive óf the state, and the contents disseminated among the people of the state at large, by officers of the state, and, save so far as aided by the general government, at the expense of the state. After the county commissioners have passed to the treasurer of state, the proceeds of the bonds as contemplated by the act of April 23, 1891, they cease to have any part or lot in the future of the enterprise. Nor has any citizen of Wayne county, as such, any right to a voice in the location, construction, or management of the station, nor to information regarding its operations other than such as is afforded to the people of every portion of the state. Without question or doubt, then, the station sought to he established in Wayne county is, to every intent and purpose, a state institution.
The question is thus presented, whether or not it is within the legislative competency to entail upon a single county of the state, by a tax upon the taxable property therein, the entire expense of a site for, and the construction of, a state institution, although the burden is sought and approved by a majority of electors voting at a special election called for the purpose.
The affirmative of this proposition is maintained by defendants in error upon the ground, in substance, that if some peculiar local benefit would flow to the people of Wayne county from the location of this institution within that county, even if the benefit be very slight, then the general assembly has the power to grant the people the right to thus tax themselves; while the opposite is contended for by plaintiff in error upon the ground, in substance, that the purpose of the enterprise being essentially a state purpose, not local but general, the tax to accomplish it becomes a state tax, pure and simple, and cannot, for reasons stated in the petition, be imposed upon the tax-payers of a single county against the expressed will of a minority.
It is not doubted that if the object sought to be attained by the act in question were local in its nature and purposes, having for its primary object an improvement peculiarly *635 and specially benefiting the property taxed, the tax complained of might be authorized by the general assembly. Many decisions of this court cited by counsel, and others not cited, giving construction to the present constitution, warrant this conclusion. We do not stop to review these decisions, for no important object would be attained by doing so. It is enough to say that they do not meet this case. Nor is it controlled by decisions upon kindred subjects giving construction to the constitution of 1802.
It is everywhere conceded, as a general proposition, that the right of taxation is an inseparable incident of sovereignty, and that it is delegated by the people to the general assembly by the constitution, and that the right to tax necessarily includes the power to fix the amount and direct upon what property it shall be imposed. But this power is subject to limitations, and important limitations have been placed upon it in this state bj' article 12 of the constitution. Section-2 of that article provides that “la-ws shall be passed, taxing by a uniform rule, all moneys, credits, etc., * * * and also all real and personal property, according to its true value in money.” This section, as has been held again and again by this court, (see Bank v. Hines, 3 Ohio St., 1, and opinion of Ranney, J., in Hill v, Higdon, 5 Ohio St., 246, and Zanesville v. Richards, same vol. 589), furnishes the governing principle for all laws authorizing taxes for general revenue, to be levied for any purpose, whether state, county, township or corporation. The object intended is to secure equality and uniformity in the imposition of these public burdens. That is, the tax must be uniform upon all the taxable property within the limits of the taxing district. The general assembly, controlled by the section cited, is without power to determine, by its own inclination or caprice, upon what property and in what proportion the burdens shall be laid, or that the burdens of one district may be imposed upon another district. If a county, township, or city tax, it must be uniform throughout the limited territory to which it is applicable; if a state tax it must be’uniform all over the state. Such is the doctrine of *636 the cases above cited, and we are not aware of any holding of this court inconsistent with it.
The character and purpose of a law, not less than its constitutionality, are to be determined by its operation and effect. If, in effect, its purpose is one that concerns, and its benefits are to be bestowed upon the people of the entire state, or the people of a particular class in the entire state, as we have already found to be true of the act in question, then it is a law general in its character, and if it seeks to impose taxation for the carrying out of those purposes, it would seem to follow that such taxes are state taxes. They are for governmental purposes. All such impositions form part of the general revenue as distinguished from assessments which are “special and local impositions upon property in the immediate vicinity” of a local improvement, “and laid with reference to the special benefit which such property derives from the expenditure.” Being,^.therefore, taxes for general revenue, measured by the rule hereinbefore stated, it would follow that in order to make the burden equal and uniform, the taxes should necessarily be imposed upon the taxable property of the entire state.
The precise question presented in the case at bar has not, so far as we are aware, been heretofore passed upon by this court. But it is believed that the principle of Fields v. Commissioniers, 36 Ohio St., 476, sustains the view- above suggested. The holding is that an act to authorize the commissioners of certain counties to locate and construct tnrnpike roads, and pay for the same by a tax to be laid on all the property in the county except such lands as had theretofore been previously assessed for similar improvements, was in conflict with section 2 of article 12 of the constitution, because the act was one intended to create an assessing district bounded by county lines, and therefore, as to that county, a general law, the fund to be raised being for general revenue purposes, and yet sought to exempt a portion of the land therein from the tax imposed, and hence was not uniform. If the commissioners of Highland county, under the statute referred to,could not, for the cost of *637 constructing a road witbin that county, assess a tax resting upon a part only of the taxable property of the county, leaving a portion untaxed, because such tax would be in violation of the rule of uniformity required by section 2 of article 12 of the constitution, it is difficult to see how the commissioners of Wayne county, acting under the act in review, can lawfully assess a tax upon the taxable property of that county, for the benefit of the whole of the state of Ohio, without violating the same rule of uniformity.
Rooking at the question from any standpoint, the conclusion seems clear that the taxation sought in this case is in effect the taking of property of the tax payers of Wayne county for the private benefit of other citizens of the state, and is obnoxious to all the objections against the appropriation of private property for private purposes which could exist in any other case.
Says Judge CoouEY, in his work on Taxation, p. 144: “In cases where the character of the work, as local or general, is plain, the rule of right is clear. If a single locality' were to assume to tax itself, or the state were to undertake to tax it, for the construction of a state work or the erection of a state building, no one could hesitate for a moment in saying there was no such right, and that there could be none so long as taxation by the fundamental law is required tq be laid by fixed rules, and is not subject to the arbitrary caprice of legislative bodies.” In support he cites State Haben, 22 Wis. 661; Livingston Co. v. Weider, 64 Ill. 427, and Sleight v. People, 74 Ill. 47.
We are met with the claim that the people of Wayne county have determined for themselves that the location of the station will be a local benefit to them; that they are content to take the burden, and .hence the court should not interfere. It is true that a majority of the electors voting did so determine. And if the proposed tax would affect them only thej' might be estopped to deny its validity. But the voters are not necessarily the tax-payers, and if they were, there would still remain to consider the rights of the minority who opposed. In the language of Judge Ranney, in Cass v. Dillon, 2 Ohio St. 646, treating of the power of *638 county commissioners to make subscription to the stock of a railroad company: “The people have not depended upon the legislature for protection. Sad experience had taught them that laws having local application, and imposing local burdens, seldom commanded the deliberate judgment of the whole representation of the state. They have, therefore, deemed it necessary to prohibit that bod}'' from authorizing this evil; and remembering that minorities were as well entitled to protection as majorities, they have given each individual citizen a sure guaranty that his right of property shall not be invaded in that manner, or for such purposes.” It may be added', also, that the submission to a vote of the electors can hardly affect the constitutional, question. A question of constitutional power can not satisfactorily be solved by asking the advice of persons claimed to be specially interested. If it can be maintained that the general assembly may authorize Wayne county to assume this burden, it may, with still less doubt, require it to be done. That this station, if established, would prove of some slight local benefit to the people living immediately near it, and, in a lesser degree, to others within the county residing farther away, we, need not. stop to deny. It is enough for us to know that the principal object intended and authorized was a state institution, to be located, constructed, controlled and managed wholly by the state for the common good of the persons interested throughout the entire state, and that whatever benefit might accrue of a local character, would be merely incidental.
It is insisted that the tax would be justified under the authority given county commissioners, township trustees and similar boards, by section 7 of article 10 of the constitution, to levy taxes for police purposes, inasmuch as the-institution will educate the people of Wayne county how to prevent and cure diseases among domestic animals and plants, such as are used for human food, and thus conduce to the public health and welfare. We think the point not tenable. If such a burden could be fixed upon a county, it could upon a township, or even a lesser territorial division. The section referred to must be held to give power to *639 boards of commissioners, etc. to levy taxes for objects strictly local in tbeir nature. It cannot Have been the purpose of the intelligent body which framed the constitution, nor of the people who adopted it, by this section, to clothe county commissioners, and township trustees and other boards, under the guise of police power, with authority to tax the people of their localities for the establishment of a state institution for the making of experiments as to foods and plants, the benefits of which, in general, are as much to be enjoyed by the people of the state at large as by those of the immediate neighborhood. Indeed, a strong argument is made favoring the proposition that the above cited section is a limitation on the power of those boards, and itself prohibits the levy of the proposed tax. We do not find it necessary to enter upon a consideration of that question.
Authorities from other states have been cited which, it is insisted, sustain the claim of defendants in error. We have examined the cases, but do not esteem it of importance that they be reviewed here. In general, the constitutional provisions involved are not the same as ours, and, in any event, the decisions are not controlling. The Ohio cases relied upon by defendants in error relate to taxation for purposes primarily local. For reasons already stated, they do not control, and can have but' little bearing upon the case under consideration.
To sum up: As conclusion, we are of opinion that the purpose to be accomplished by the act of April 23, 1891, is not a local, but a general, purpose; one common to the state at large. The tax to accomplish it is, therefore, a state tax for general revenue, because the object to which it is to be devoted is the establishment of a state institution, which tax, to be lawful, must, under section 2 of article 12 of the constitution, be levied by a uniform rule, and rest equally upon all the taxable property of the state. And as the act under review undertakes to place this burden upon the taxable property of one county alone/it is in conflict with the section above cited, and therefore void.
It follows that in sustaining the demurrer to the petition, and dismissing the same, the courts below erred. At.the *640 bearing in tbis court it was urged that the plaintiffs, by their conduct, had estopped themselves to deny the legality of the proposed tax. Of course this cannot be determined except by issue joined. The judgments .will, therefore, be reversed, and the cause remanded, -with directions to overrule the demurrer and for further proceedings according to law.

Judgment reversed.