JONATHAN HILL *v.* JOSIAH HIGDON.

Legislation authorizing cities and villages to levy special assessments for the purpose of improving streets, upon real estate peculiarly and specially benefited, and in proportion to such benefit, is not repugnant to any provision of the constitution.

IN Error to the District Court of Hamilton county.

The facts in this case are the following :

Hill was the owner of a lot of ground at the south-west corner of Seventh and Plum streets, in the city of Cincinnati, fronting fifty-one feet on Seventh.   On the 19th of September, 1851, the city council passed an ordinance to re-grade and pave Seventh street, between Plum and Western Row, and to assess the expense of so doing, according to the provisions of the act of March 20th, 1850, "further to amend the charter of the city of Cincinnati," and of the general ordinance of June 12th, 1850, upon the subject of special taxes for the improvement of streets, etc. Higdon did the work under a contract made with the city, October 21, 1851, and on the 3d day of November, 1851, the city council assessed a special tax of one dollar and sixty-six cents and seven mills per front foot, for each front foot on Seventh street between Plum and Western Row, to pay the expense of this work; and ordered Hill, with other property owners on Seventh street, to pay the assessment on his lot within twenty days from the date of the ordinance, or be subject to penalty and interest. Hill refused to pay the assessment.   December 1st, 1851, Higdon brought suit against him for the amount of it, before a justice of the peace, and the cause was taken by appeal to the court of common pleas of Hamilton county, and the main question upon which the parties joined issue, to wit, the constitutionality of the law providing for the assessment, was raised by special demurrer to the declaration.

The court of common pleas, in June, 1852, overruled the demurrer, and rendered judgment against Hill for the amount of the assessment, with interest and costs.

The district court, in April, 1854, on error, affirmed the judgment of the common pleas. To reverse this judgment of affirmance, this petition is prosecuted.

*A. P. Hill* and *J. T. Crapsey*, for plaintiff in error.

*Corwine, Hayes & Rogers*, for defendant in error.

RANNEY, C. J. The real question upon which the parties are at issue, and which has been fully argued, is this : Can laws, authorizing the corporate authorities of cities and villages to levy a special assessment upon property particularly benefited, for the purpose of improving streets, continue in force, or be now passed, consistently with the present constitution of the State ?

Upon this question, involved in several other cases before us, as well as in this, the court have bestowed the most careful attention, and I now proceed to state the conclusion to which they have arrived. The subject is very important in its practical bearings, and not without serious difficulty ; and for myself I am bound to admit, that the doubts which I at first entertained have not been entirely removed. But it is not upon *doubts* that this case is to be decided. The question can only be solved by a construction of several provisions of the constitution ; and a proper construction can only be given, when the *intention* of those who framed and adopted that instrument is ascertained. We are bound to presume that the general assembly have continued to pass laws, conferring this authority, upon a settled conviction of their power to do so ; and it is only when a *clear* incompatibility between the constitution and the law is made to appear, that the courts are authorized to interfere. We cannot overturn in doubt, what they have established in settled conviction. *Cincinnati, W. & Z. R. R. Company* v. *Clinton Co.*, 1 Ohio State Rep. 77.

Laws of the character of those now drawn in question, are no novelty in this State. Their origin is nearly coeval with our legislative history, and they have continued to multiply, as occasion has required, from that time to the present. Indeed, so

true has this been, that there is no hazard in affirming, that the authority they give has been almost uniformly one of the important powers conferred upon municipal corporations. Nor has their consistency with our first constitution remained unchallenged. In at least two well considered cases, every objection that could be suggested has been answered, and their constitutionality fully affirmed. *Bonsal* v. *Lebanon,* 19 Ohio Rep. 518 ; *Scovill* v. *The City of Cleveland,* 1 Ohio State Rep. 127.

It is no part of my purpose to go again over the ground covered by those decisions. It was there shown, with what of clearness and force the judges delivering the opinions were capable of employing, that the sum exacted was not a taking of private property, within the meaning of the constitution; and, consequently, that the article providing for its inviolability was not infringed. That it was an exercise of the taxing power, and the sum demanded, a tax levied for the purpose of constructing a public improvement. That the right of taxation was an inseparable incident of sovereignty, delegated in the general grant of legislative authority, and when used by the general assembly as a means to accomplish a lawful purpose, was subject to no express limitations or restrictions, but the provision against poll taxes. That the right to tax for such a purpose necessarily included the power to determine the extent, and upon what property the tax should be levied ; and that its imposition upon the property particularly and specially benefited by the improvement, was but a lawful exercise of the discretion with which the legislative body was invested, in apportioning the tax.

That it was a power liable to abuse, and very often abused, was conceded ; but, as the people had made a plenary delegation of authority, and had imposed no positive restrictions upon its exercise, it was thought to be clear, that they had relied for protection upon the wisdom and justice of the representative body, and the accountability of its members to them, rather than the restraining powers of the courts of law.

We see no reason to doubt the correctness of these conclusions ; and their application to the present controversy demonstrates the entire inapplicability of those provisions of the present constitu-

tion which provide for the inviolability of private property, and regulate the exercise of the right of *eminent domain;* and leave nothing but the question, whether the principles or mode of assessment upon which such taxes are levied, are inconsistent with any of the provisions of this constitution? That the 12th article was intended to impose, and has imposed, most important limitations and restrictions upon the taxing power, is certainly true; and that any substantial departure from the principles therein established, in the cases to which the provisions of that article extend, is such an invasion of the constitutional rights of the citizen, as to call for the interposition of the judiciary, may be deemed equally certain.

By the positive terms of the second section of that article, " laws *shall* be passed, taxing, by a uniform rule, all moneys, etc., and also all real and personal property, *according to its true value in money.*" In the case of *The City of Zanesville* v. *Richards,* decided at the present term, we have held, that this section is equally applicable to, and furnishes the governing principle for, all laws levying taxes for general revenue, whether for State, county, township, or corporation purposes; and that it requires a uniform rate per cent. to be levied upon all property, according to its true value in money, within the limits of the State, or the local subdivision for which the revenue is collected. The general assembly is no longer invested with the discretion to apportion the tax, and to determine upon what property and in what proportion the burden shall be laid. A uniform rate per cent. must be levied upon *all* property subject to taxation, " according to its true value in money," so that all may bear an equal burden. If laws of the character of those now under investigation, are controlled by this section, it is evident they cannot be sustained. They do not impose the tax upon all the property of the city or village, nor is it apportioned according to the true value in money of the property upon which it is laid. As the mode prescribed in this section is sufficient to enable municipal corporations to raise a revenue for the accomplishment of all their legitimate purposes, had the constitution contained nothing further to evince the intention of its framers, it might be argued, (and I think

conclusively,) that any other mode of levying taxes for any purpose was necessarily excluded. But it does contain a further provision, which every sound rule of construction binds us to regard, and which seems utterly inconsistent with such a conclusion. By the sixth section of the thirteenth article, the general assembly is required to "provide for the organization of cities and incorporated villages by general laws; and to *restrict* their power of taxation, *assessment*, borrowing money, contracting debts, and loaning their credit, *so as to prevent the abuse of such power.*" It is very clearly our duty to give effect to the natural and obvious import of the language of this section. It relates to the organization of cities and villages, and imposes upon the general assembly the very important duty of so restricting the powers it was supposed they would possess, as to prevent their abuse. Amongst these is the power of "assessment." This power had, for many years, been in constant and active exercise in every part of the State, and was perfectly understood by every member of the convention. The popular as well as legal signification of this term, had always indicated those special and local impositions upon property in the *immediate vicinity* of an improved street, which were necessary to pay for the improvement, and laid with reference to the special benefit which such property derived from the expenditure of the money. They had always differed widely from the ordinary levies made for the purposes of general revenue. To confound them now, in giving a construction to the second section of the twelfth article, is to make not only unmeaning but utterly absurd, a material part of the sixth section of the thirteenth article. To *restrict* or regulate the exercise of a power, furnishes the strongest possible implication of its existence; and to impose upon the general assembly the duty to do this, in respect to a power which did not exist, or which had been expressly prohibited, would be nothing better than nonsense.

It is our duty to give such a construction to the constitution as will make it consistent with itself, and will harmonize and give effect to all its various provisions. To do this, we have only to suppose, that the convention used language with reference to its popular and received signification; and applied it as it had been

practically applied for a long series of years. That where taxation is spoken of in the second section of the twelfth article, reference is made to the general burdens imposed for the purpose of supporting the government, and the revenue raised expended for the equal benefit of the public at large; while the power of *assessment,* referred to in the sixth section of the thirteenth article, although resting upon the taxing power, was intended to describe a distinct and well known mode of laying a local burden upon particular property, with reference to the *peculiar* and *special* benefit derived to such property from the expenditure of the money. The general language of the first of these sections, is thus only so far restricted as to give effect to the specific provision contained in the last. By the first, as the money is raised and expended for the equal benefit of all, no discretion is left with the general assembly; but the tax must be levied equally upon all property, and according to its true value. But in the exercise of the power of assessment, legislative discretion in apportioning the burden according to benefits, is left as broad and unfettered as under the constitution of 1802. The last of these sections contemplates a delegation of the power to municipal corporations, and imposes upon the legislature the *duty* (as yet very imperfectly performed) of so restricting its exercise as to prevent abuse. A failure to perform this duty, may be of very serious import, but lays no foundation for judicial correction.

The language of this section furnishes very strong evidence that the convention carefully discriminated between taxation and assessment; and regarded them as distinct modes of raising money for different purposes, and upon different principles; from the fact that *both* terms are employed, and *both* are required to be restricted when used by cities and villages. The origin and history of the section lead to the same conclusion. It is almost a literal copy of the ninth section of the eighth article of the constitution of the State of New York. From the case of *The People* v. *The Mayor etc. of Brooklyn,* 4 Com. Rep. 440, it appears that this mode of taxation had been much complained of in that State, and that an attempt was made in the convention of 1846 to effect its abolition. To this end the subject was referred to a

Hill *v.* Higdon.

committee, who reported a section for that purpose. But the convention refused to adopt it, and finally incorporated the provision as it now stands in the constitution of that State, and as it is found in ours. Upon this provision Judge Ruggles remarks: " Instead of abolishing the system of assessments, this section of the constitution refers it to the legislature for the correction of its abuses. The direction given to restrict the power of cities and villages to make assessments, presupposes and admits the existence of a power to be restricted. The constitution, therefore, in this section, recognizes and affirms the validity of the legislation by which city and village assessments for local purposes, like that now in controversy, are authorized; and seems to remove all doubt in relation to the legislative power in question."

It cannot be supposed that those who borrowed this provision from the New York constitution, were ignorant of the objects and purposes for which it was there adopted; and it is but fair to presume that it was intended to effect the same purposes and objects here. In our present constitution, as well as in the former, the general grant of legislative authority includes the power of taxation in all its forms. Restrictions upon its exercise are to be looked for in other parts of the instrument. The second section of the twelfth article has established the principles upon which all taxes for general revenue purposes must be levied; but it does not extend to what was then, and is still, well known as special assessments, because the sixth section of the thirteenth article shows that they were not intended to be included. Dealing with them under the name of " assessments," the people have contented themselves with enjoining upon the legislature the duty of preventing abuses, by restricting the power of the cities and villages to impose them.

As to the policy or justice of such legislation very different opinions might be entertained. But even in that view, it should be remembered that most of the improvements in towns and cities had already been made at the expense of the adjoining lot owners. To subject them again to taxation to improve other streets for the especial benefit of those owning lots upon the improvement, would, in many cases, work very great injustice. The evil, if evil it was,

had been so long continued as to make it doubtful whether its correction or toleration would be attended with the greater injustice.

Upon the whole, we are satisfied that the law under which this assessment was made, is not so clearly repugnant to any provision of the constitution as to authorize us to refuse its enforcement; and that this judgment should be affirmed.

BARTLEY, J., dissented.