Scott J.
Counsel for plaintiff claims that the ordinance of September 14, 1869, whereby the council of the incorporated village of Troy assumed to impose on the plaintiff an obligation to light the track of its railway, passing along Clay street, within the corporate limits of the village, is wholly unauthorized and invalid. But if authority to pass such an ordinance could be conferred by the legislature on the council of any city or incorporated village of the state, such authority was clearly given by the 32d chapter of the municipal code, of May 7, 1869 (66 Ohio L. 220, 221). So far as we can discover, the ordinance strictly follows and in no way transcends the powers conferred.
But it is claimed that the ordinances which this chapter purports to authorize, are in conflict with the constitution of the state, and cannot be maintained, either as the imposition of a tax (which the constitution requires to be levied by a uniform rule upon all taxable property), or as an assessment, such as that instrument authorizes. Counsel defines the “assessment” known to and recognized by our constitution and laws, as “local impositions upon real estate for improvements, directly beneficial to it, and in proportion to the benefits conferred.” And he refers to the case of Hill *157 v. Higdon, 5 Ohio St. 247, where the court (per C. J. Ranney), speaking of assessments, says: “ The popular as well as legal signification of this term, has always indicated those special and local impositions upon property in the immediate vicinity of an improved street, which were necessary to pay for the improvement, and laid with reference to the special benefit which such property derived from the expenditure of the money.” And counsel argues with much force, that the imposition upon the plaintiff of the whole burden of lighting the track of its railway within the limits of a city or village, which inures as much, or more to the benefit of others than of itself can not he justified as an assessment, within the meaning of the constitution.
From these views, we are not disposed to dissent; nor are they controverted by counsel for defendant.
On the contrary, they claim that' the ordinance in question, and the statute which authorizes it are valid, only because they come within, and are the exercise of, the legislative power “to establish police regulations throughout the state; ” and they say that the sole object of the law “ is the protection of lives and property as well of passengers as of persons not on the cars, from the danger incident to the running of powerful engines of destruction through the streets of our thickly populated towns and cities during the hours of darkness.” They say that the law in question is of the same nature, and is as unquestionably valid as many other statutes which have been uniformly upheld as being within the proper province of police regulations. Such, for example, are the statutes requiring railroad companies “to fence their tracks; to huild cattle-guards; to whistle at road-crossings; to stop at railroad-crossings; to keep flagmen at street-crossings; to provide spark-arresters for engines; to regulate rate of speed through towns and cities; to keep head-lights of certain Reflective power qpon engine ; to place bell and whistle upon engines; to provide bridge between cars; to provide certain kinds of heating and lighting apparatus for ears;.to keep on hand certain *158 means of escape in case of collision, fire, etc., and many others in the various states, which the courts have sustained.”
Wo think these views of counsel for defendant in error are undoubtedly correct. The legislation in question was but the exercise of the police power of the state, which is vested in the legislature.
“This police power of the state,” says C. J. Redfield, in Thorpe v. Rutland and Burlington R. R. Co., 27 Ver. 149, “ extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the state. According to the maxim, Sic utere tuo ut alicnum non Iced,as, which being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others. . . . By this general police powér of the state, persons and property are subjected to all kinds of restraint and burdens, in order to secure the general comfort, health, and prosperity of the state — of the perfect right of the legislature to do which, no question ever was, or, upon acknowledged general principles, ever can, be made, so far as natural persons are concerned.”
And though the plaintiff here is a corporation, yet as it was incorporated under a general law, which, by its terms, is subject to amendment, modifications, or repeal, we think it can claim no exemption from the power of police regulations, to which natural persons are subject in the use of their property.
In our system of government, the power to establish police regulations has been left with the state governments, and may be exercised by their legislatures, according to their judgment and discretion, in any manner not inconsistent with, or repugnant to, the federal or respective state constitutions. Cooley on Constitutional Limitations, 573, et seq. And we are not aware of any constitutional provision with which the police regulation in question conflicts.
Regarded, therefore, as a police regulation not in conflict *159 with the constitution, we think it clear that all questions as to the expediency, necessity, or justice of the enactment which subjects railroad companies to the burden of lighting their roads within the corporate‘limits of cities and villages through which they pass, must be determined by legislative, and not by judicial discretion. Cooley’s Con. Dim. 168. We are, therefore, of opinion that we are not authorized to declare the ordinance here drawn in question to be invalid, as an exercise of the police power conferred by the legislature on a municipality. And if such a duty can constitutionally be imposed on a railroad company, its performance may be secured by necessary sanctions. And, certainly, no milder sanction could be effective to secure the performance of the duty imposed, than that which authorized the performance of the duty required, by the municipality, at the expense of the delinquent railroad company. We see no reason, therefore, to doubt the validity of the legislation which authorized village or city municipalities to light the tracks of railroads within their limits, at the expense of the owners of such railroads, when they should neglect or refuse to perform the duty thus lawfully imposed upon them; and, by ordinance, to declare such expense to be a lieu upon any or all of the real estate of such delinquent railway company within the limits of the municipality. The declaring of such a lien is a remedial measure, resting in the discretion of the legislature, and to be limited only by constitutional inhibition.
But in this case, the village of Troy, by the ordinance of April 22, 1873, not only assessed the sum of $411 upon the plaintiff’s real estate within the village, as the “ amount due the village of Troy from said railroad company, for lighting its track through said village,” for a specified period of time, and declared said sum to be a lien upon said real estate, but farther declared that said sum should be “ placed upon the tax duplicate and collected as other taxes, or by action at law, or in any other manner council may hereafter provide.” And the village council subse•quently, on the 13th of May, by resolution, instructed the *160 corporation clerk to certify the amount so assessed to the auditor of the county, to be placed upon the tax duplicate for collection. "We think this action of the council, by which it assumed to convert the amount which it alleged to be due to the village, as the expense of lighting the plaintiff’s railway through the same,'into 'a tax, or an assessment in the nature of a local tax, was unauthorized. If the village had, in pursuance of the statute, performed a duty primarily imposed upon the plaintiff, it had undoubtedly a right of action to recover the amount of the expense thereby necessarily incurred. But if this duty was imposed, not in the exercise of the power of taxation, or assessment in the nature of local taxation, the cost of its performance by the village on behalf, or at the expense of) the plaintiff, could not, by the. village council, be converted into a tax or assessment proper, and, as such, be placed on the county tax duplicate for collection as “other taxes.” The cost of lighting the railway was a claim or demand which the village corporation might be authorized to enforce (in the language of the constitution) “ by due course of law,” and not otherwise. Bill of Rights, sec. 16. “Due course of law” implies and requires that the parties litigant shall each have a day in court. The village of Troy, in this case, claimed to have a right to demand and recover from the plaintiff here the sum of $411, for services rendered, which were properly chai’geable to the plaintiff. Upon all- questions touching the validity of this charge, the regularity of the proceedings by which it was imposed, and its proper amount, the plaintiff had a right) under the constitution of the state, to a judicial trial.
That a statute purporting to authorize pecuniary claims, whether between natural persons or corporations, and which are not in the nature of taxes, general or local, to be placed on the tax duplicate, and collected as taxes, without a judicial trial, would be subversive of constitutional rights, and, therefore, wholly invalid, is too clear to admit of argument.
And it is by no means apparent that the legislature in *161 tended any such unconstitutional purpose in the enactment under consideration. It is true that section 433 of the municipal code provides that “ the council may direct the manner in which the expense of such lighting shall be assessed ; and when assessed, the amount shall be due and payable, and shall be a lien on . . . the real estate of the railway company.” By this section it was, doubtless, intended to give the village council power to declare the expense of lighting the railroad track a lien upon all, or any part of the railway company’s real estate within its jurisdiction. But, by designating the exercise of this power as an “ assessment,” we are not to suppose that the legislature attempted to convert into an actual tax or local assessment a charge not imposed in «the exercise of the, power of taxation or assessment. A mere name could have no such magic power.
The manner in which the expense of such lighting may be collected, or the lien thus authorized be enforced, is prescribed by the following section (434): “ Such charge may be collected, or the lien enforced, in the manner pointed out in the chapter providing for the assessment of damages and expenses for making public improvements.” Turning to the chapter referred to, we find that it provides, in sections 545 to 553 inclusive, that the owners of property upon which special assessments have been made shall be personally liable for the amount of the assessments, which may be recovered by a suit against them in any court of competent jurisdiction, in the name of the corporation. It is also provided that the lien upon real estate may be enforced in any court having general jurisdiction, in the name of the corporation, and that the court of common pleas shall have jurisdiction for that purpose, though the amount involved be less than that to which its jurisdiction is limited in other cases.
The collection of a charge, or the enforcement of a lien, in this manner, whatever might be the ground of the claim, would be “by due course of law,” because it would afford to *162 all parties, a judicial trial, and a full opportunity of being heard, and' would, therefore, in that respect, not be open to objection on the ground of unconstitutionality. And this, we have no doubt, is the mode of collection to which section 484 was intended to refer. But immediately following the sections in chapter 48, which give this remedy, comes section 554, which provides as follows: “ The council may order the clei’k or other proper officer of the corporation to certify under his official seal any unpaid assessment or tax to the auditor of the county in which the corporation is situated, and the amount of such assessment or tax so. •certified shall be placed upon the grand tax duplicate of the county by the county auditor, and shall, with ten per cent, penalty, to cover'the interest and expense of collection, be collected with, and in the same manner as, state and county taxes, and credited to the corporation.”
There is no doubt that the legislature might authorize local taxes and assessments proper, imposed in the due exercise of the power of taxation or assessment, to be thus collected as other taxes. But, as we have seen, the liability of the railway company to pay the expense incurred in lighting its track did not arise from the exercise of any such power. It was a statutory liability, arising from its failure to comply with a police regulation, and, like other liabilities of a similar character, could only be enforced by action. Its essential nature could not be changed by legislative enactment. Nor do we suppose the legislature intended anything of the kind. We think that section 434 adopts, for the collection of a charge or the enforcement •of a lien, in a case like the present, the mode prescribed and subsequently pointed out in sections 545 to 553.
It follows that the council of the village of Troy had no power to place its claim or charge against the plaintiff, which was wholly unliquidated, except by its own ex parte finding, on the county duplicate for collection, and the defendant, as treasurer of the county, has no legal right to •collect the same, as a tax or otherwise.

Judgment for plaintiff.

Johnson, J., did not sit in this case.