Bradbury, J.
The constitutionality of the act of the general assembly of the state of Ohio, passed April 15, 1889, 86 Ohio Raws 851, is involved in the determination of the case. That act reads as follows:
“SECTION 1. Be it enacted by the General Assembly of the state of Ohio, That section 251, of the Revised Statutes, be supplemented as follows ;■
“Sac. 251 a. At the time of filing the report required by section two hundred and fifty-one, every corporation or •company operating a railroad, or any part of a railroad within this stare, shall pay to the commissioner a fee of one dollar per mile for each mile of track, whether main, branch, double or side track, operated by them within this state. Any corporation or company failing to pay such fee, at the time precribed, shall forfeit and pay a sum of not less than •one thousand nor more than five thousand dollars. All fees received by the commissioner under this section shall be paid by him into the state ^ treasury, upon an order from the .auditor of state.
Section 251, Revised Statutes, to which the section above •quoted is supplementary, requires the president, etc., of any *198 railroad situate in whole or in part within this state, to file' in the office of the commissioner of railroads and telegraphs, a report containing a minute and elaborate account of its business and transactions for the preceding year.
The constitutionality of the section imposing a fee of one dollar per mile of track, is assailed on two distinct grounds: (1.) That it contravenes section,2, article XII, of .the constitution of this state, which provides that “Raws shall be passed, taxing by a uniform rule, all moneys, credits, investments * * * * and also all real and personal property', according to its true value in money.” * * (2.) That it violates section 5 of the same article (XII) which pr ovides that “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
If this exaction from railroad companies, imposed according to trackage, is a tax, within the meaning of the constitution, then it falls within the inhibition of both of those sections of our coustitution. Within the inhibition of section II, because the railway property, including tracks, within the state, is taxed by the general taxing laws of the state, at its true value in money, and the tracks of a railroád, being part of its property, is subjected to a burden not imposed upon any other property within the state, and not imposed “according to its true value in money;” and within the inhibition of section 5, because it fails to state the object for which the tax is levied. The question of the constitutionality of the section, therefore, must depend upon whether it shall be held to levy a tax or'not, within the meaning of the constitution, and counsel direct their argument, in great measure, to the discussion of this point.
Counsel for the state contends, at one stage of his argument, that the exaction is not a tax, but, instead, partakes-more of the nature of, and should be treated as, an assessment levied according to benefits, which, it is claimed, accrue to the railroads operated within the state, by the provisions of the act creating the office and prescribing {lie duties of the commissioner of railroads and telegraphs.
We are so accustomed to associate the doctrine of assess *199 ments, levied upon property 'according .to tbe benefits that may, accrue to it, with its usual subjects -of application, some improvement of a local character, such as sidewalks, grading and paving highways, and constructing and maintaining ditches and the like, that the two are with difficulty separated in our mental operations;- but, nevertheless, there may be no such necessary connection between them as .to forbid a far wider extension of the principle, and its application to many other and perhaps widely varient subjects. But, however this may be, it is not necessary to pursue the speculation further, for the sum exacted is an arbitrary one, having no apparent connection with any benefits conferred by the act itself, or that to which it is supplementary, and the law fails to attempt in any manner, whatever, to provide a method by which any relation between the benefits and burdens that it confers or imposes, can be ascertained; but simply provides for the payment of a fixed sum which is to be applied solely to swell the general revenues of the state. None of the features heretofore present, in all acts of the legislature which provide for assessments upon property, according to the benefits it receives from the operation of law, are discernable in the act under review, and it cannot be assigned a place in that class of legislation.
The power of the legislature to levy special exactions to be applied in payment of the expense of governmental supervision over certain .lines of business, which the state in the exercise of its police powers may supervise, was maintained by fhis court-in case of The Cincinnati Gas Light & Coke Company v. The State of Ohio, 18 Ohio St. 237. That case involved the constitutionality of an act of the general assembly'of this state passed April 6,1868, 63 Ohio Raws, 164, (S. & S. 158), providing for the inspection of gas-meters. The act provided for the appointment of' an inspector, and prescribed his salary, provided also for the purchase of such apparatus as might be required in the performance of the duties of his office, and for the purpose of paying the salary of the inspector and the cost of the necessary apparatus to enable him to perform his duties, provided that_ a sufficient sum therefor should be assessed *200 against the several gas companies of the state according to their respective appraised valuation. In the 18 Ohio St., 287, the power of the legislature to levy the exaction imposed upon gas companies, by the act above mentioned, was assailed, upon the ground that it contravened the constitutional rule of equality in levying taxes, prescribed by sec. 2 of article XII of the constitution. This court, however, sustained the act. The opinion of the court was delivered by Judge Brinicerhoff; and while it may be contended that some illustrations are found in the opinion of that learned judge, not strictly apposite to the case, yet the opinion, taken as a whole, clearly shows that the dceision was put upon the ground that the exactions levied upon the several gas companies, were not a tax within the constitutional meaning of that term. This view is supported by the following quotation from that opinion: “It is settled by the repeated decisions of this court, in Hill v. Higdon, 5 Ohio St. 243; Reeves v. Treasurer of Wood County, 8 Ohio St. 333: and Baker v. The City of Cincinnati, 11 Ohio St, 534, that the section of the constitution just referred to is only applicable to, and furnishes the governing principle for, all laws levying taxes for general revenue, whether for state, county, township, or municipal corporation purposes. Now, although the assessment or charge upon the gas companies of the state imposed by the statute in question may be a tax, in the widest import of the word, it certainly is not a tax for purposes of general revenue. It is the assessment of a charge for a special purpose growing out of the exercise of the supervisory power of the government over the business in which these companies are engaged.”
It is true that an examination of the act above mentioned, providing for the inspection of the gas-meters, will disclose provisions highly beneficial to the gas companies, and it is contended that therein it differs from the act providing fofa'commissioner of railroads and telegraphs; the latter act, it is said, imposes burdens on the railroads of the state instead of conferring benefits. An inspection of this latter act will disclose provisions, some of which are burdensome while others are beneficial; but, whether the one *201 or tbe other predominate, we do not think it material to inquire in this connection, for we apprehend that the question whether the act before mentioned, relating to the inspection of gas-meters, etc., was upon the whole beneficial, rather than burdensome, to the gas companies of the state, did not bear materially upon the depision of the court in 18 Ohio St. 237. The ground upon which that decision was put, we think, was that the business of manufacturing and selling gas was one that fell within the police or supervisory power of the state, and that the expense necessarily attending upon its supervision could lawfully be charged against the gas companies, because .the exaction made for that purpose was not a tax within the constitutional meaning of that word.
It cannot, we think, be denied that the business of transporting passengers and freight by the railroads within this state, is as clearly within the supervisory, or police powers, of the state as is that of making and vending gas; but while this is so, it does not aid in upholding the statute now under consideration, for that statute does not attempt, as the gas inspecting statute did, to provide a fund to be directly applied to liquidate the expenses attending the supervision.
What is this, statute? Its constitutionality must be determined by its operation. It provides in terms that there be placed upon each mile of railroad track within this state an exaction of one dollar per annum; the statute calls it a “fee,” but its nature is not affected by the name that may be assigned to it. It is an exaction levied upon railroad tracks, and railroad tracks are property. It does not differ in principle from a fixed sum, levied upon all farmers of the state, for each acre of land of which they may be seized, or each head of horses or other live stock that they may own. In both instances the tax is levied upon property, but it is neither leived “according to its true value in money” nor uniformly upon all property; both of which are constitutional requirements (sec. 2, art. XII), if it is a tax within the constitutional meaning of that word. That it is such a tax, we think, there can be little, if any, doubt. A tax is *202 “a pecuniary burden imposed for the support of the government.” * * * “Burdens or charges imposed by the legislative power of a state upon persons or property to raise money for public purposes.” 2 Bouvier, 705. The money raised by this section under consideration is directed to be paid into the state treasury; it becomes a part of the funds of the state applicable to any conceivable public purpose. There is not a word in the section under consideration, or in the act to which it is supplementary, to indicate a purpose that the fund raised shall be limited, or even in any way specially applied, to the expenses incurred in super, vising the railroads of the state. A law like this — the direct and only purpose it can accomplish, being to create a a fund by an exaction on property to be paid into the state treasury to be used indiscriminately for any and all public purposes — must be regarded as creating a tax. It bears no resemblance to, and should not be confounded with, that class of laws enacted by the legislature, the immediate object of which is to call into active operation the police powers of the state, but which, incidentally or indirectly, may cause the production of public revenue.

Judgments of the ciraái and court of common pleas reversed, and petition dismissed.