Seney, J.
The plaintiff Frey is the owner in fee of a part of lot No. 96 in the city of Findlay. This part of lot is a corner lot, and situated at the north-east corner of Main street and Sandusky street in said city, thirty-feet on Main street and one hundred and forty feet on Sandusky street.
- The plaintiff Niles is the owner in fee of a part of-lot No. 165 in the City of Findlay. This part of lot is a corner lot, and situated at the south-east corner of Main street and San-dusky street in said city, forty-eight feet on Main street and one hundred feet on Sandusky street.
*312 That all lots on Main street in said city as platted and recorded are numbered with reference to Main street, and each of said lots as platted and recorded, has a frontage of fifty feet and a depth of two hundred feet.
That all lots on Sandusky street in said city, as platted and’ recorded, are numbered with reference to Sandusky street, and each of said lots as platted and recorded has a frontage of fifty feet, and a depth of two hundred feet.
That the council of said city determined to improve said Main [street from the south bank of the Blanchard river south to Hardin street, a distance of about 1800 feet, which distance included the parts of lots owned by plaintiffs Frey and Niles. That said determination was expressed by an ordinance duly passed. Included within the provisions of said ordinance was one which provided that the cost and expense of said improvement should be assessed by the foot front on all the lots abutting on said improvement.
That afterwards the said council duly passed an assessment ordinance to pay for said improvement, basing said,assessment upon the foot front on all lots abutting upon Main street from the Blanehard river south to Lima street, a distance of about 2800 feet, which included the distance from the Blanchard river south to Hardin street, and in addition thereto the further distance, from Hardin street south to Lima street, without naming, specifying or describing any particular lot so to be assessed.
That the amounts assessed against plaintiffs parts of lots are ■ assessed by the foot front, without any reference to the depth of said parts of lots, and are assessed in amounts equal to the assessments on other lots haying the same frontage, but having the full depth of the lots as platted and recorded, to-wit: the depth of two hundred feet.
That the council of said city determined to improve said Sandusky street from Main street east to the T., C. & C. R. R., which distance included the parts of lots owned by plaintiffs which lie lengthwise on said Sandusky street. That said *313 determination was expressed by an ordinance duly passed. Included within the provisions of said ordinance was one which provided that the cost and expense of said improvement should be assessed by the foot front on all the lots abutting on said improvement.
That afterwards the said council duly passed an assessment ordinance to pay for said improvement, providing therein that a part of said improvement between Main street to the first alley east of Main street should be assessed per foot front a certain amount per year. That another part of said improvement from the second alley east of East street to the T., C. & C. R. R. should be assessed per foot front a certain other amount per year. That another part of said improvement, from the first alley east of Main street, should be assessed per foot front a certain other amount per year. That another part of said improvement, from the east side of East street to the west line of the second alley east of East street, should be assessed per foot front a certain other amount per year.
■ That in pursuance of said ordinance of assessment, the auditor of the county has placed upon the duplicate against the parts of lots owned by the plaintiffs Frey and Niles, an assessment based upon the frontage of said parts of lots as the said parts of lots lie lengthwise and abut on Sandusky street.
Upon this state of facts, are the assessments made against the parts of lots owned by Frey and Niles authorized by law? This is the question presented to this court by the petition of the plaintiffs filed herein, praying that said assessment may be enjoined. The question involves as to Main street this principle : Can a city council assess for a street improvement when the assessment is made by the foot front, the parts of lots abutting upon the improvement, regardless of the depth of the parts of lots ; or should the assessment be made upon the entire lot, and the parts of lots abutting upon the im? provement he assessed for their proportionate share of the assessment on the entire lot, said proportion to be estimated, *314 as the parts of lots abutting upon the improvement bears to the entire lot?
The question involves as to' Sandusky street this principle :■ Where a lot lies lengthwise upon a street sought to be improved by paving, and when the city council has determined that the improvement should be assessed upon the lots abutting upon the improvement by the foot front, is the frontage of the lot to be considered as it lies lengthwise, or is the lot in reference to the street to be considered as land not subdivided into lots, in which case council should determine the frontage?
These questions, so far as we are aware, have never been decided by our Supreme Court. They are new questions, and in their determination, without precedent, we must follow as our guide the general principles that govern assessments, and applying those principles in the light of the legislative intent as expressed by the legislature of our state in various sections of the Revised Statutes, arid bringing to our aid various decisions of our Supreme Court upon the power of city councils as embraced within the sections. Assessments for local improvements are a species of taxation, and being so must be uniform. The burden imposed by them must have for a foundation, equality and uniformity. The right to make an assessment for a local improvement arises solely and alone by reason of a benefit derived from the improvement ; w’here there is no benefit, the legal right to assess, does not exist.
As said by Ranney, Judge, in the ease of Hill v. Higdon, 5 Ohio St. 247, in speaking of assessments: “ The popular, as well as legal signification of the term, had always indicated those special and local impositions upon property in the immediate vicinity of an improved street, which were necessary to pay for the improvement, and laid with reference to the special benefit whieh such property derives from the expenditure of the money.”
.And, as said by Gilmore, Judge, in the case of Chamber *315 lain v. Cleveland, 34 Ohio St. page 561, in speaking of assessments : “ The right that gives to municipal corporations the privilege of resorting to this mode of taxation, is not, like the right of general taxation in the state, founded on necessity ; on the contrary, the right of a municipal corporation to assess private property to pay for a local publie improvement, is not founded on necessity, but on a principle of justice, by which the public may take from an individual whose lands, owing to their proximity to it, are especially benefited by the improvement, such a portion of the cost thereof, as is the equivalent, but not in excess of the special benefits conferred by the improvement; and this principle of justice, in itself, impliedly furnished the measure of, and limits the extent of the right.” “ If a municipal corporation sees proper to avail itself of the assessment mode of taxation to pay in whole or in part for local public improvements, and in making such, the property of the individual, owing to its proximity to the improvement, is specially benefited, it is but just that such property should pay towards the cost of the improvement a sum that is equal to the value of the special benefits conferred, for to this extent it is peculiarly benefited over and above that of other individual members of the public. But when the property has paid the value of the special benefits so conferred, its owners stand in the same relation, to any residue of the cost of the improvement remaining unpaid, that other members of the public do, and all must bear the burden of paying such residue by general taxation. If a sum is exacted in any instance in excess of the value of the special benefits conferred, it is, as to such excess, in that instance, private property, unjustly taken for public use without compensation to the owner.”
And as said by Hickman, Judge, in the case of Wewell v. The City of Cincinnati, 45 Ohio St. 424: “ The foundation of special assessments for public improvements, is the special benefit derived by the owner or property over and above the rest of the community: '■ If the: assessment imposed is in-ex *316 •cess of advantage received, to that extent there is a contribution to the public use without compensation.”
Thus, it will be seen,- that assessments for local public improvements are only justifiable on the ground of special benefits. As between the owners of property upon. which are thus conferred special benefits, it is taxation, the rules or rates of which must be uniform, and the special benefits conferred upon each becomes greater or less as the special benefit to each is measured in its relation to the special benefit to all. Thus the special benefit to be assessed and paid for, becomes such by reason of the property being in the vicinity of the improvement, and by the further reason of the relation of each special benefit to each other special benefit. If the owner is required to pay an assessment that is assessed by a different rule than another, upon the same improvement, he would then be required to pay more or less, as the case might be, not for the special benefits conferred when compared with the special ben■nefits derived from the entire improvement.
To provide a .rule by which the special benefits can be ascertained, the legislature of our state enacted sections 2264 and 2269 of the Revised Statutes. By these sections three modes are provided.
First — In proportion to the benefits whieh may result from the improvement.
Second — According to the value of the property assessed.
Third — By the foot front of the property bounding and abutting upon the improvement.
• By the same sections the property that may be assessed, consists only of such .lots and lands in the corporation as abut upon said improvement, orare adjacent and contiguous to such improvement so as to be benefited thereby. So the question arises, what does the word “lot” mean in these sections ? By section 2269 it is provided, “if the special assessment is made according to valuation, the council shall be governed by the assessed value of the lots, if the land is subdivided, and the lots are numbered and recorded.” Thus it will be seen, if the *317 assessment is to be made according to valuation, the lots that are assessed shall be such lots as are numbered and recorded. This certainly means the entire lot; not a fractional part thereof. This certainly means that the lot thus numbered and recorded has been platted with a frontage alone upon the street or alley corresponding to the number of the lot. Thus are lots numbered. Thus are lots platted.
It is further provided by section 2269 : “ If the land is not subdivided into lots, the council shall fix the value of the lots, or the value of the front of such land to the usual depth of lots, by the average of the two blocks, one of which shall be next adjoining on either side. And if there are no blocks so adjoining, the council shall fix the value of the lots or lands to be assessed so that it will be a fair average of the assessed value of other lots in the neighborhood.”
This certainly means that lands that are not subdivided into lots and numbered and recorded, shall be made so by the council for the purpose of assessment, so as to correspond with the lots as to the value or frontage value, as those lots that are numbered and recorded, thus preserving uniformity and equality in the assessment.
It is further provided by section 2269 : “ If, in making a special assessment by the foot front, there is laud bounding or abutting upon the improvement, not subdivided into lots, the council shall fix the depth of the land so that it will be a fair average depth of lots in the neighborhood, which shall be subject to such assessment.”
This certainly means that lands that are not subdivided into lots and numbered and recorded, shall be made so by council in depth for the purpose of assessment, so as to correspond with the lots in depth that are numbered and recorded, thus preserving uniformity and equality in the assessment by the foot front.
Thus it will be seen, in these various rules for assessment it is the aim and intention to so adjust the lands that each *318 owner will be assessed, by comparison with the lots that are numbered and fecorded.
Section 2264 provides, when council makes the assessment by the foot front of the property bounding and abutting upon the improvement, “ the council by ordinance shall set forth specifically the lots and' lands to be assessed.”
Thus it will be seen when the assessment is to be made by the foot front, the property to be assessed is lots and lands. Construing this section with section 2269, which provides rules for assessments in certain cases, and, as we have seen, the lots referred to in this section 2269, refer to the lots that are numbered and recorded, so also the -lots referred to in section 2264 refer to the lots that are numbered and recorded.
As said by White, Judge, in thecase of The City of Cincinnati v. Oliver, 31 Ohio St. page 375 to 376 : “ There is no limitation upon the power found in the section, except in the description of the property that may be assessed. The property consists of all the lots or lands bounding or abutting on the proposed improvement.” The apportionment is to be “either in proportion to the foot front of the lots or lands so abounding or abutting, or according to the value of such lots or lands as assessed for taxation.” The statute indicates no preference for one mode of apportionment over the other. The choice of the mode is left to the judgmentand discretion of the council. But the statute does clearly indicate that the burden is to be distributed upon the same property, whichever mode of apportionment may be adopted.” And on page 377 he says: “ The mode of apportionment is not the means intended for ascertaining the extent of the area of the abutting property subject to assessment. And it seems to me to be wholly inadmissible [to suppose that the legislature intended that the assessment upon the same tract or parcel of land, if levied according-to.-its taxable valuation, should be limited to the usual depth of lots by the average of. the two adjoining blocks *319 but if levied by the frontage, the' assessment' should extend through the entire tract without reference to its depth.”
So that we hold, that when an assessment is made by council for an improvement by the foot front, as applied to lots, it embraces the entire lot as numbered and recorded. It thus follows that the assessment made against the plaintiffs as to Main street is illegal. To illustrate by the Frey case; her part of lot on Main Street had a frontage of thirty feet, but its depth was only one hundred and forty feet. The depth of' all lots as numbered and recorded is two hundred feet. The party or parties owning the remainder of the two hundred feet in depth, to-wit, sixty feet, should be assessed their proportionate share of the foot front assessment, leaving as the assessment against Frey the 140-200 or 7-10 of the foot front assessment.
Again, as to the Main street assessment. The improvement authorized to be made, and for which lots were to be assessed by the front foot, commenced at the south bank of the Blanchard river, and extended south to Hardin street. The assessment ordinance to pay for the improvement commenced at the south bank of the Blanchard river, and extended south to Lima street. The improvement ordered is separate, distinct and entire, and as such, only lots and lands as abut upon the improvement ordered, are subject to be assessed for the payment, and when the council included within the terms of the assessment ordinance other lots and lands not abutting upon the improvement as ordered by the ordinance, to-wit: the lots and lands on Main street between Hardin and Lima streets, it did that which was not authorized by law, and henee the assessment thus made is illegal.
As to the Sandusky street improvement, the ordinance authorizing the improvement is entitled “ An ordinance to provide for the improvement of Sandusky street from the east line of.Main street to the track of the Toledo, Columbus and Cincinnati Railway Company.” By the provisions of the ordinance the distance of the entire improvement is subdivided *320 into sections of different widths, and the expense and cost of the entire improvement, with certain named exceptions, is ordered to be paid by the foot front. Notwithstanding the subdivisions into sections, we think by the very terms of the ordinanee the entire distance is one separate, distinct and entire improvement, and all legislation by the way of ordinances should treat of it as an entire improvement.
In what way the cost and expenses of the improvement are to be assessed is determined at the time the improvement is ordered. In this case it was determined, viz : by the foot front.
As said by White, Judge, in the case of Douglass et al. v. The City of Cincinnati, 29 Ohio St. page 167 : “ Whether the improvement is to be paid for by special assessments, and if so, in what mode the assessments are to be levied, is to be determined when the improvement is ordered.”
So that after the improvement is ordered, and the mode of assessment is determined, the assessment ordinance following subsequent thereto, must conform in the matter of assessments to the mode previously determined.
As said by White, Judge, in the case above cited, on page 168: “ The subsequent proceedings are merely the carrying out of the scheme of improvement provided for in the ordinance creating the improvement.”
Applying this rule to the case before us, the ordinance authorizing the improvement provided, as we have seen, for the assessment by the foot front along the entire improvement; so providing, it must apply to each foot front in the same amount. Otherwise the assessment would not be uniform. We are supported in this by the case of Jaeger et al. v. Burr, Administrator, etc., 36 Ohio St., p. 164. The first paragraph of the syllabus reads: “ When the cost of a street improvement is required to be assessed upon the abutting property in proportion to frontage, the rate of assessment must be uniform upon all the property assessed.” So we hold that the assessment ordinance, as passed by the city council, wherein it pro *321 vided for different amounts per foot front, depending upon the section in which the lots or lands were situated, is invalid, and the assessments against the plaintiffs depending upon said ordinance are illegal.
As to the lots of plaintiffs, being corner lots, and laying lengthwise as to Sandusky street, they were assessed upon the entire length as frontage — is this legal ?
The lots on Sandusky street, as numbered and recorded, are fifty feet frontage and two hundred feet in depth.
As wé have seen, assessments for local improvements are only justifiable upon the theory of special benefits, upon the principle of justice, that where a benefit is conferred not common to the public, justice demands that such a benefit should be paid for by the person thus specially benefited. As between all parties thus specially benefited, the special benefit to each is dependent upon the special benefits to all, otherwise the special benefits for the entire improvement would not be uniform. We have further seen that the lots mentioned in the section of the statutes referring to assessments for local improvements have reference solely and alone to such lots as are numbered and recorded. Thus the frontage of a lot has reference to the lot as numbered, and the number of the lot has necessarily reference to the street or alley upon which it abuts. This being true, the corner lots of the plaintiffs are only numbered and recorded as to Main street; hence it follows that the frontage of the lot thus numbered and recorded is on Main street alone, these corner lots not being numbered and recorded so far as any other street than Main street is concerned. They are not lots numbered and recorded under the sections providing for assessments for local improvements, and for want of being numbered and recorded as refers to Sandusky street, they are lots as to Main street alone, and as to Sandusky street land which has not been subdivided into lots.
The evident policy and intention of the legislature in providing for assessments for local improvement, is to equalize *322 the burden among those specially benefited. The various modes thus provided have for their foundation stone in each mode, the depth of the lot. The cases we have before us furnish a striking illustration of the gross inequality that may exist among those specially benefited by the improvement, if the rule were otherwise than what we have construed it to be. Take for instance the Frey lot — she has abutting upon San-dusky street one hundred and' forty feet, with a depth of in fact thirty feet (though not the depth of a lot as numbered and recorded), with ten feet more abutting upon Sandusky street. And saying the assessment was $5.00 per foot front, she would be assessed $750.00 for the improvement, while her next door neighbor, with a lot numbered and recorded as applied to Sandusky street, abutting upon the same improvement, having fifty feet front and two hundred feet in depth, would only be assessed one-third as much, viz., $250; while at the same time Frey would have and own 4,500 square feet of ground specially benefited by the improvement, and her next door neighbor would have ¿nd own 10,000 square feet of ground specially benefited by the same improvement. Thus Frey, by the improvement, would have a special benefit attached to only 4,500 square feet of ground, while her neighbor would have a special benefit attached to 10,000 square feet of ground, and at the same time Frey would be compelled to pay $500.00 more for her special benefit than her neighbor, who derived a much greater special benefit. This would be gross injustice. This would be gross inequality. This would lack that uniformity, which, as held in the case of Jaeger et al. v. Burr, Administrator, etc., 36 Ohio St., page 164, is absolutely essential to the validity of an assessment ordinance by the foot front.
So we hold that the assessment as to Sandusky street, as made against the plaintiffs, was not authorized by law, hence illegal, and to. make it a legal assessment, the city council should treat their land on Sandusky street as not subdivided into lots, and under section 2269 of the Revised Statutes *323 should adjust their land so as to fix the depth of it equal to the other lots that are numbered and recorded upon said improvement, thus ascertaining the legal and proper frontage of the land that should be assessed per foot front.
Under section 2262, the council, tojpay for the cost and expense of any improvement contemplated by this section, shall levy and assess upon the general tax list an assessment on all taxable real estate and personal property in said corporation, etc., etc.
Under section 2263, the council, to pay for the cost and expense of any improvement contemplated by this section, shall levy and assess upon the general tax list an assessment on all taxable, real and personal property in said corporation, etc.
Under section 2264, the council may refuse to levy and assess upon the general tax list an assessment on all taxable, real and personal property in said corporation, etc., in which case it shall be assessed on the abutting and such adjacent and contiguous or other lots and lands in the corporation as are benefited thereby.
From the reading of these sections it will be noticed that by virtue of sections 2262 and 2263 the assessments are placed upon the general tax list, which would include all property of every description; while, under section 2264, the property assessed is limited to the lots and lands benefited.
Under section 2269 (“Rules of Assessments”) it is provided that in making special assessments according to valuation, the council shall be governed by the assessed value of the lots or lands, etc.
It will be noticed that by this section the valuation of the lots or lands is not as those lots or lands appear upon the general tax list, but as they are assessed.
Section 2790 of the Revised Statutes provides: “ That the assessor shall in all cases from actual view and from the best source of informatiou within his reach determine as near as practicable the true value of each separate tract and lot of real *324 property in his district, according to the rules prescribed by this chapter for valuing real property, and he shall note in his plat-book, separately, the value of dwelling-houses, mills and other Buildings which exceed one hundred dollars in value on any tract of land or plat of land not incorporated, or on any land included in any municipal corporation, which , shall be carried out as a part of the value of such tract, etc.”
It will be noticed from this section that lots and lands proper, for the purposes of taxation, are assessed separate and distinct from the buildings and improvements thereon,but asto the value of the lots and lands for the purpose of general taxation the improvements are added to the assessed value of the lots or tracts of land, and this value is placed upon the general tax list.
■ Referring again to section 2269, which provides “that the council shall be governed by the assessed value of the lots, etc.,” not the value as it appears upon the general tax list, which includes improvements and all, but the value of the lots as assessed, which means the value of the lots or lands separate and distinct from the improvements thereon.
■ As said by White, Judgé, in the case already cited from 31 Ohio State: “ The statute indicates no preference for one mode of apportionment over the other. The choice of t'he mode is left to the judgment and discretion of the council. But the statute does clearly indicate, that the burden is to be distributed upon the same property, whichever mode of apportionment may be adopted.
Under section 2270 it is provided, “ The tax or assessment specially levied and assessed on any lot of land for any improvement shall in no case, except as provided in section 2272, amount to more than 25 per cent, of the value of the property as assessed for taxation, etc.”
As we have seen, if the assessment is made by valuation, the value is the assessed value free from improvements, and as said by White, Judge, the rule is the same, whatever mode of assessment is adopted, so that the value of the property, as *325 assessed for taxation, as provided by section 2270, is the assessed value as returned by the land appraisers, free from buildings, etc. This section 2270 limits the assessment to 25 per cent, of this assessed valuation, beyond which the council is not authorized to assess upon the abutting lots or lands.
Bearing in mind the general principle of assessment, viz : justice, equality and uniformity, if the rule were that the limitation of 25 per cent, extended to the value of the lot as appears upon the general tax list, which would include buildiugs and all improvements, it takes but one or two illustrations to show that each, justice, uniformity and equality would be violated. Take for instance the Frey lot on Main street. It has a handsome building erected thereon, probably adding to the lot $15,000.00, while her neighbor across San-dusky street, Niles, has buildings probably worth not to exceed $1,000.00. Consider the frontage of both these properties on Main street equal, estimated by the respective assessed value of the lots free from buildings, there would probably be no difference in value. The special benefits by the improve-' ments would be equal. Net Frey, on account of her building, would be compelled to pay on a valuation of $14,000.00 in excess of Niles, while the next day after the improvement was ordered, Niles may erect a building worth $25,000. The assessments are paid by annual installments; thus by the case I cite, Niles would receive the same special benefit as Frey, yet Frey could be assessed a great deal more than Niles. Again, suppose the fee of the lot is in Frey, and the building is owned by her lessee, how can the building be assessed ?
Section 2285, of the Revised Statutes, provides : “ Special assessments shall be payable by the owner of the property assessed personally by the time stipulated in the ordinance providing for the same, and shall be a lien from the date of the assessment upon the respective lots or parcels of land assessed.”
In construing this section, the Supreme Court held, in the *326 case of Douglass v. The City of Cincinnati, 29 O. St. 165, that: “ What constitutes abutting property, liable under the municipal code to be assessed for the improvement of a street, is to be determined by the situation of the property at the time of the passage of the ordinance directing the improvement and prescribing the inode of making the assessment, and such liability is not affected by subsequent changes in the title to the property.”
So we hold that the limitation of 25 per cent, upon the righ t of assessment, as provided by section 2270 of theRe vised Statutes, is ascertained by the assessed value of the lot, as returned by the land appraiser, and docs not include the value of the buildings thereon.
These improvements on Main and Sandusky streets have both been completed; the plaintiffs signed the petition for them, and both were active in seeing that they were completed; both had notice or knowledge of the mode and manner of the assessment, and made no objection. We know of no law, where the improvement is to be assessed by the foot front, that notice is required; so an objection would not in this Gase have accomplished any purpose. It is claimed that on account of these various acts of the plaintiffs they are estopped from questioning the assessments, under the authority of Tone v. Columbus, 39 Ohio St. 281. In our opinion, while they may be estopped under that authority from claiming to be released from the entire assessment, yet they are not estopped from claiming that the assessments as made are illegal, and that they should only be assessed according to the special benefits, as provided by law. This, we think, is expressly held in the case of Tone v. Columbus. The third paragraph of the syllabus in that case reads as follows : “ A petitioner for the privilege of the statutes will be estopped to deny the power under it of the city to grant his petition; but the mere fact of the petitioning will not estop him from objecting that the subsequent proceedings of the city have been conducted in violation of the requirements of the statute.”
J. A. & E. V. Bope, for plaintiff.
W. F. Duncan, for City.
Under section 2289 it is provided “ when the assessment has not been properly made against any defendant, or upon any lot or parcel of land sought to be charged, the court may nevertheless, on satisfactory proof that expense has been incurred which is a proper charge against such defendant or lot or parcel of land in question, render judgment for the amount properly chargeable against defendant, or on such lot or lands, etc.
Section 2290, provides : “ When it appears to the council that a special assessment is invalid, by reason of informality or irregularity in the proceedings, or when an assessment is adjudged to be illegal by a court of competent jurisdiction, the council may order a re-assessment, whether the improvement has been made or not.”
We think the cases before us come within the curative provisions of these sections, and having found that the assessments are invalid, the assessments as made against the plaintiffs will be perpetually enjoined, but without prejudice to the right of making another assessment as against the plaintiffs in accordance with law.
The defendant, the City of Findlay, will pay all costs, for which execution is hereby awarded, and the cause remanded for execution.