Nichols, C. J.,
dissenting. I am unable to agree with my associates relative to the construction to be given to the qualifying clause “as may be provided by law,” found in Section 6 of Article IV of the Constitution of Ohio, as amended September 3, 1912, having to do with the jurisdiction on error of the courts of appeals, and the importance of the subject justifies a statement of the conclusions which lead me to dissent from the judgment.
It is the holding of the court that the jurisdiction in error so conferred on the courts of appeals is absolutely fixed by the constitution, with the same degree of certainty and unalterability as that of the supreme court, and that the general assembly is wholly without power or authority to either qualify, diminish or enlarge it. It is my opinion that this jurisdiction is subject to such limitations and qualifications as the general assembly may fix; in other words, that the jurisdic *420 tion of the court of appeals as to proceedings in error is to be fixed exactly as was that of its immediate predecessor, the circuit court, and it follows therefore that the general assembly might give finality to the jurisdiction of the court of common pleas in any cause or proceeding.
In the original Constitution of Ohio, adopted in 1802, it is provided, in Section 2 of Article III thereof, that the supreme court shall have appellate jurisdiction, both in common law and chancery, in such cases as shall be directed by lazv.
In Section 4 of the same Article it is provided that the supreme and common pleas courts shall have complete criminal jurisdiction in such cases and in such manner as may be pointed out by lazv. Section 5 of the same Article provides that the courts of common pleas shall have jurisdiction of all probate and testamentary matters and such other cases as shall be prescribed by lazv.
Thus we find employed the three terms, “directed,” “pointed out” and “prescribed by law.”
Unquestionably the jurisdiction of all the courts of the state of Ohio from 1802 to 1851, except in the specific instances mentioned,, was essentially of legislative and not of constitutional creation.
Following this history under the Constitution of 1851, we find that original Section 2 of Article IV reads: “It [the supreme court] shall have * * * such appellate jurisdiction as may be provided by lazv.” We come into contact with this phrase now for the first time, and from 1851 down to and including the latest word of the people in the formation of our organic law, we find the same *421 phrase employed and no other, excepting in the provision for the jurisdiction of the court of common pleas (see Section 4 of Article IV), where it is directed that its jurisdiction shall be fixed by law.
In the amendment to Section 2 of Article IV, of date October 9, 1883, the appellate jurisdiction of the supreme court was defined as being such “as may be provided by law.”
When the circuit court was created by amendment to the Constitution, October 9, 1883, being Section 6 of Article IV, its appellate jurisdiction was defined as being such “as may be provided by law.”
Section 8 of Article IV, which formed the probate court, provided that the probate court shall have jurisdiction in probate and testamentary matters, etc., and such other jurisdiction, in any county or counties, “as may be provided by law.”
Up until the decision of the majority of the court in the instant case, no one ever contended that this phrase had the limited meaning now given it. No court in the state, nisi prius, intermediate or supreme, ¿ver held that “as may be provided by law” meant “may provide by law for the method of the exercise of that jurisdiction.” It was ever and always held to mean just that which on its face it purports to mean — such jurisdiction as may be provided by law; that is, by the general assembly.
Under the constitution as it existed up to the amendments of 1912, it was universally understood that the general assembly had the authority to limit, cripple and even utterly wipe out the ap *422 pellate jurisdiction of either or both the circuit and supreme courts, since this jurisdiction was only such as might be provided by law, and of course the granting of such jurisdiction carried with it the right of limitation or even abrogation.
When the constitutional convention of 1912 reached the question of the jurisdiction of the court of appeals, it sought to and did separate the jurisdiction as to appeal and error, although following the precedent set in our former constitutions of defining both classes of proceedings as appellate jurisdiction. In the first place it gives the court of appeals appellate jurisdiction (jurisdiction on appeal) in the trial of chancery cases, thereby limiting and not enlarging the jurisdiction on appeal as theretofore provided for the circuit court by the legislature, and limits this class of cases most decisively. The supreme court, in the case of Snyder et al. v. Deeds et al., 91 Ohio St., 407, in construing this provision, held in effect that the general assembly no longer had the power to provide generally for the appeal of a cause or proceeding.
Reaching the error side of the court’s jurisdiction, and to distinguish from proceedings by way of appeal, it provides that it shall have jurisdiction to review, affirm, modify, or reverse (being all inclusive of error proceedings) the judgments of the courts of common pleas, superior courts and other courts of. record within the district as may be provided by law.
We see that the same old time-honored expression was used — the phrase that for more than *423 sixty years had come to have a generally accepted meaning — not in any sense describing the method of exercising the jurisdiction (that is mere procedure) as never had been done before, but rather providing the forum by which the jurisdiction should be fixed, as always had been done before.
Had it been the purpose of the framers of this amendment, in the employment of this phrase, to limit its application to the mere method of the exercise of its jurisdiction, how easy it would have been to have added to the phrase “as may be provided by law” the words “for the exercise of such jurisdiction,” and how natural to do so, if it were desired to employ this phrase in a different sense from that in which it had so long been understood.
The classification of the several inferior courts by name meant nothing in this respect, nor did the words “within the district.” When the constitution ceased to employ the general term “appellate jurisdiction,” and substituted jurisdiction “to review, affirm, modify, or reverse the judgments,” etc., it was of course necessary to specify the courts whose judgments might be reviewed, etc. For the purpose of this case it is as if the provision read: “Jurisdiction to review, affirm, modify, or reverse judgments,” etc., “as may be provided by law.”
The construction given by the majority makes the phrase unnecessary, if not meaningless:
It would certainly riot be necessary, after having definitely fixed the jurisdiction of the court of appeals beyond any possibility of legislative interference, to further provide that the method of the exercise of that jurisdiction should be provided for *424 by law. The court to which the constitutional jurisdiction has been attached would have the inherent power to provide by rule of court all the methods and means by which the jurisdiction should be exercised. Examples of this character can be found in the certiorari jurisdiction of the supreme court in cases of public or great general interest, and the jurisdiction of the court of appeals, where it is directed to certify to the supreme court cases in which the judgment upon which they have agreed is in conflict with the judgment pronounced upon the same question, by another court of appeals of the' state.
In neither case is there a method provided for the exercise of this jurisdiction, either by the constitution or the general assembly. Yet the jurisdiction is not defeated on this account, but fhe same is exercised entirely through rules promulgated by the court.
I feel, too, that the spirit of the new judicial amendment has been lost sight of by my associates. Its object, chiefly, was to put an end to the vexatious and burdensome delays attendant on the settling of such disputes between our citizens that might ripen into suits at law. It was not its purpose to alter the jurisdiction of the old circuit court but to give finality to it.
The construction now given this section has quite the contrary effect. It absolutely destroys the finality of the jurisdiction of the court of common pleas in a variety of cases — for example, divorce cases and the many cases coming into the court of common pleas from the several municipal *425 courts of the state — and likewise disenables the general assembly to confer final jurisdiction on common pleas courts as to cases properly triable in juvenile courts, cases arising under the various humane laws of the state and those arising from the violation of the laws restricting the illegal sale of intoxicating liquors and the sale of adulterated food products.
The municipal courts have been organized in the larger cities of the state to facilitate the prompt and efficient administration of justice in the smaller affairs of our people, and they are being resorted to by litigants generally. It has been regarded that the slogan of “one trial, one review” was being fulfilled by stopping the litigation in the common pleas courts, at least as to some of the actions in which the municipal court has original jurisdiction.
Another matter of evil to be apprehended from the judgment in this case is the possibility of the practice coming into use of going on error direct from the municipal courts to the court of appeals, thereby unduly enlarging the work of that court and wrecking in a large measure the evident purpose of the people to put an end to the wearisome delay in the hearing of cases. The municipal courts of the state are all declared to be courts of record. How, then, can we 'escape the conclusion that a litigant, aggrieved by the decision of a municipal court, may not go direct on error to the court of appeals ?
It is true that under Section 4 of Article IV the jurisdiction of the court of common pleas is “to *426 be fixed”' by the general assembly, and it may provide for error proceedings from the municipal courts to the court of common pleas, but with the interpretation given the “as may be provided by law” clause, then, under the constitution, the litigant has a right to prosecute error direct from the municipal court to the court of appeals, and it is a right that cannot be denied by the general assembly. He has the choice of two forums wherein to prosecute his error, neither one exclusive but both permissive.
It may be argued with plausibility that under the guise of established procedure the constitutional jurisdiction of the court of appeals is not impinged upon, in this regard, since by legislatively provided procedure the litigant may find his way to the court of appeals by first invoking the appellate jurisdiction of the common pleas, thence to the court of appeals. But I gravely doubt the soundness of that proposition, for after all it operates to deny to a party the privilege, constitutionally conferred, of going directly from a certain court of record to the court of appeals.
A careful and painstaking review of the debates in the constitutional convention fails to reveal a word to the effect that “as may be provided by law” was to be given any other or different meaning than its simple language suggests, and it is incredible that this term would be employed in so vitally a distinguishing sense without passing comment or debate.
This convention was intent on taking no chances on the legislature undoing its work in the way of *427 limiting the jurisdiction of the supreme court, and to that end removed from the constitution its “as may be provided by law” appellate jurisdiction and. provided for its limitation in express terms; but when it reached the subject of the appellate jurisdiction of the court of appeals it employed the same old term, thereby leaving it to the wisdom of the lawmaking branch of the government to provide not for the method of the exercise of the jurisdiction but for the jurisdiction itself.
It was said by Ranney, J., in the course of his opinion in the case of Hill v. Higdon, 5 Ohio St., 243, at page 248: “It is our duty to give a construction to the constitution as will make it consistent with itself, and will harmonize and give effect to all its various provisions. To do this, we have only to suppose that the convention used language with reference to its popular and received signification; and applied it as it had been practically applied for a long series of years.”
Again, Day, J., in the opinion in Wolf v. The State, 19 Ohio St., 248, at page 255, says: .“This clause in the old constitution having received a judicial construction before it was adopted in the one now in force, it is but reasonable to presume that the framers of the present constitution understood and used it in the sense that had been thus given to it in the instrument from which it was substantially copied.”
When we stop to consider that the supreme court of Ohio, in the many cases to be found in its reports relative to the scope of the jurisdiction of the several courts, has ever held that by reason of *428 the employment of the clause “as may be provided by law” these several jurisdictions were the subject of legislative and not constitutional creation and abrogation, then the observations of the two eminent jurists quoted from are to be regarded as illuminating in the instant case.