Nichols, C. J.
Defendant in error, James H. Lathrop, was convicted in the Lucas county probate court for selling a preparation of morphine in violation of the provisions of Section 12672, General Code, as amended in 103 Ohio Laws, 505.
Judgment of the probate court was affirmed by the court of common pleas, and this judgment of affirmance was reversed by the court of appeals on *80 the sole ground that Section 12672, found in 103 Ohio Laws, page 505, was repealed by 103 Ohio Laws, page 340.
This judgment of reversal is now in the supreme court for review.
It appears that the amendment to the section in question found in 103 Ohio Laws, page 340, was enacted into law by the general assembly on the 15th of April, 1913; and two days later, on the 17th of April, the general assembly again ámended the same section by adding opium and its derivatives to the list of proscribed drugs. The disputed question arises over the fact that the governor, to whom, under the constitution, all bills must be transmitted after their passage by the general assembly — inadvertently, we may safely assume — signed the bill later passed first; that is, he signed the act of April 17 on May 2 and that of April 15 on May 3.
The bill signed on the 3d of May was the so-called agricultural commission enactment, amending many sections of the General Code, as well as enacting several supplementary sections.
The bill signed on May 2 amended-but one section and in addition repealed Section 12674.
The court of appeals based its decision on the fact that the act signed on the 2d was repealed by the act of the governor in signing the act on the 3d, and counted of no effect the fact that the legislature passed the measure so held to have been repealed two days later than the .measure which the court holds repealed it.
*81 The effect of this decision is that the bill last signed, although first passed, repealed the act first signed, although later passed.
We thus have presented the anomalous situation of the governor being granted an additional power of veto not contemplated by the constitution. He may, if this decision is permitted to stand, by mere order of the time of signing, determine which of two acts relating to the same subject-matter may survive, and, although signing both, may kill the one as effectually as if he had vetoed it; and furthermore— as happened in this instance — may defeat the manifest purpose of the legislature by signing first in order the later expression thereof, and do this, it would appear, without intending to do so, and in effect defeat not only the intention of the legislature, but his own as well.
The anomaly' of the situation is further emphasized by the apparent paradox of the executive killing the bill by approving it, whereas, by vetoing it, it most likely would have survived, for the general assembly would most certainly have repassed the bill by the required constitutional majority, there being no conceivable reason why the unrestricted sale of cocaine and its associated drugs should be forbidden, and opium and its derivatives permitted, and the time necessary to have brought this about would have made the later act the last to go into effect.
The executive should not be permitted to defeat the legislative will except by constitutional methods ■— that is, by the exercise of the veto power. If it *82 were permitted him to do so, grave possibilities of encroachment on the legitimate functions of the general assembly might reasonably be apprehended.
The executive has, under our constitution, no part to play in the legislative field except through the veto. It is not necessary, to give effect to the act of the general assembly, that he even sign a bill; it will become a law just as effectually without his approval as with it. The ten-day period fixed by the constitution for the consideration by the governor of such measures as the general assembly may enact, is not so much for the purpose of gaining his approval as for the determination of whether or not he shall disapprove it.
Section' 1 of Article II of the Constitution of Ohio provides that the legislative power of the state shall be vested in a general assembly consisting of a senate and a house of representatives, the people reserving to themselves the power to propose laws to the general assembly and to adopt or reject them by referendum, and the further power of adopting or rejecting any law passed by the general assembly. If the governor, by mere order of the time of approval of measures passed by the general assembly, can make or unmake laws, then, contrary to the express terms of the constitution, he becomes the lawmaking power and his intention, rather than that of the legislature, governs.
After a bill has been passed by the legislature and the three days for reconsideration have passed, it has no further authority in the premises. It cannot recall the bill from the hands of the governor. If it were the will of the legislature to de *83 feat its former enactment, it can then only act through the instrumentality of another law.
It is perhaps pertinent to this inquiry to observe that the amendment to the section in question, passed on the 15th of April, in nowise changed the subject-matter of the section, but simply substituted the words “agricultural commission” for the words “and the members of the state board of pharmacy,” this being essential on account of the fact that the law took certain functions from the state board of pharmacy and transferred them to the agricultural commission, while the act of April 17 materially changed the substance of the act. And it bears the strongest of internal evidence that it was sought to and did amend the act as passed two days previous, and not old Section 12672, General Code. It would indeed be a strange proceeding to hold that the legislature passed on the 15th of April a law repealing an act which it did not pass until the 17th of the same month, and which, for aught we know, may not at the time have been even introduced in the lawmaking body, for it is by no means rare that a bill is introduced and enacted into law, through suspension of the constitutional requirements, within a period of two days. It is not difficult to understand how this situation developed. The agricultural commission law was long and involved, the other bill was short and confined to but one subject, and the executive, in giving consideration to the two measures thus transmitted to him, would naturally require greater time for the one than the other.
*84 We are not unmindful of the provisions of Section 16 of Article II of the Constitution, requiring that “every bill passed by the general assembly shall, before it becomes a law, be presented to the governor for his approval. If he approves, he shall sign it and thereupon it shall become a law and be filed with the secretary of state,” under the express terms of which the two measures in question became laws of the date of his approval. There is nothing in the record to indicate which of the two acts was first presented to the governor, but it must be presumed in the ordinary course of events that the act first passed was first presented, and, had there been neither approval nor veto, then the act of April 17 would have been the act last to go into effect.
Approval by the executive is unnecessary to give force and effect to a law, since the same section of the constitution provides that if a bill be not returned by the governor within ten days after being presented to him, it shall become a law in like manner as if he had signed it.
We are constrained to hold that the act last actually signed did not operate to repeal the act last passed. We are persuaded that the manifest purpose of the lawmaking power should not be defeated by means wholly beyond its control.
It is the plain duty of the court to give effect, if at all possible, to the latest expression of the legislature on a given subject. And rather than vest the executive with the power of selection, which the constitution neither impliedly nor expressly grants to him — and, indeed, which the *85 constitution in terms, by formal exclusion, denies to him — we hold that the act of April 17, as the later expression of the general assembly, must prevail; and we do this the more readily because thereby the clear intention of both the general assembly and the executive is given effect.
Authority in support of this holding may be found in the case of Southwark Bank v. Commonwealth, 26 Pa. St., 446, wherein it was held:
“1. The general rule is that where two statutes contain repugnant provisions, the one last signed by the governor is a repeal of the one previously signed.
“2. This is so merely because it is presumed to be so intended by the lawmaking power; but where the intention is otherwise, and that intention is apparent from the face of either enactment, the plain meaning of the legislative power thus manifested is the paramount rule of construction.”
The constitution of Pennsylvania on the subject of the governor’s participation in legislation through the exercise of the veto power is substantially that of Ohio. The facts in the Pennsylvania case were in all respects similar to the instant case. The general assembly had passed, on the 9th of March, a certain statute, and five days later, on consideration of the same subject-matter, expressly repealed the law so passed five days previous. The governor, however, as in the instant case, signed the act of March 14 on the 15th of the same month, and the act of March 9 one day later. Nevertheless, the holding there, as indicated by the syllabus, was to the effect that the act last *86 passed, although first signed, was the law of Pennsylvania.
Independent of these considerations the judgment of the court of appeals- must needs be reversed for another reason. An examination of the 1913 Session Laws, Vol, 103, discloses this state of facts:
Agricultural commission act: Passed April IS, 1913; approved May 3, 1913; filed with secretary of state, May 7, 1913.
The other act in question: Passed April 17, 1913; approved May 2, 1913; filed with secretary of state, May 8, 1913.
Thus we find that the act adding morphine and its derivatives to the list of regulated drugs, while later passed and first signed, was filed in the office of the secretary of state one day later than the agricultural commission act.
When, then, under our constitution, does a non-emergency act go into effect?
This question involves a construction of two apparently conflicting sections of the Constitution, that of Section lc of Article II and Section 16 of Article II.
Section 16 of Article II provides that if the I governor approves a bill he shall sign it and there-1 upon it shall become a law. Section lc of Article II provides that “No law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in thel office of the secretary of state, except as herein! provided.”
*87 The “except as herein provided” clause has undoubted reference to the provision in Section Id of Article II, to the effect that laws providing for tax levies, etc., and emergency laws shall go into immediate effect.
Thus we find that under the provisions of Section lc just quoted, the act of April 17, having been filed with the secretary of state one day later than the agricultural commission act, although approved a day before, did not go into effect until ninety days after May 8, and not of the date of its approval by the governor, while under the terms of Section 16, Article II, this same act would become a law immediately upon its being signed by the governor. These two sections of the constitution thus apparently repugnant are by no means hopelessly so. It was' observed by Ranney, J., in the course of his opinion in Hill v. Higdon, 5 Ohio St., 243, 247: “It is our duty to give a construction to the constitution as will make it consistent with itself, and will harmonize and give effect to all its various provisions.” Applying in the instant case this rule of construction, it is found not at all difficult to reconcile these apparently conflicting provisions of the constitution.
They can be reconciled as now to be indicated. There is a class of laws not subject to the ninety-day period. Laws providing for the state levies, appropriations for current expenses of the state government and state institutions and emergency laws, as defined in Section Id of Article II, go into immediate effect by the express language of the Constitution. This, of course, must be understood *88 as meaning that such laws shall go into immediate effect as soon as they shall have been signed by the governor.
Both Section 16, as it now reads, and Section lc of Article II were written into the organic law on the same day, namely September 3, 1912. It cannot be thought for a moment that the framers of those two proposals entertained the notion that such laws as were made subject to the referendum should go into effect immediately upon being signed by the governor, in the face of the prohibitory terms of Section lc.
We can give effect to both sections by holding, as we do, that laws providing for tax levies, appropriations for current expenses of the state government and state institutions and emergency laws, as defined in Section \d of Article II, go into immediate effect when approved by the governor, and that all other acts go into effect ninety days after the same have been filed with the secretary of state, regardless of the date of approval by the governor.
The judgment of the court of appeals is reversed and that of the court of common pleas affirmed.

Judgment reversed.

Johnson, ■ Donai-iue, Wanamaker, Newman, Jones and Matthias, JJ., concur.